UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MARIA ANDRADE,<br><br>            Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>            Defendant. | No. CV 04-5802-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 16, 2004, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed a Consent to proceed before the undersigned Magistrate Judge on October 27, 2004.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on July 28, 2005, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on July 23, 1952. [Administrative Record ("AR") at 56.] Plaintiff has one year of college education and past work experience as a beautician. [AR at 81, 86.]

On January 16, 2003, plaintiff filed an application for Disability Insurance Benefits, alleging that she has been unable to work since July 1, 2002, due to neck and back problems. [AR at 18-19, 56-58, 80, 89.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on January 7, 2004, at which plaintiff appeared with counsel and testified, through an interpreter, on her own behalf. A vocational expert also testified. [AR at 228-45.] On January 20, 2004, the ALJ determined that plaintiff was not disabled because she retained the residual functional capacity[1] to perform medium[2] level work activity with certain limitations. [AR at 18-23.] After the Appeals Council denied review on May 19, 2004, the ALJ's decision became the final decision of the Commissioner. [AR at 5-9.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

---

[1] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

[2] Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c) and 416.967(c).

adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.  THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id.

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial work activity since the alleged onset of her disability. [AR at 19, 22.] At step two, the ALJ concluded that plaintiff had the severe impairment of left shoulder pain, but that her cervical and lumbar spine pain are not severe impairments. [AR at 19.] At step three, the ALJ found that plaintiff's impairment does not meet or equal the requirements of any of the impairments in the Listings. [Id.] The ALJ determined that plaintiff retains the residual functional capacity to perform medium work with certain restrictions.[3] [AR at 20.] At step four, the ALJ determined that plaintiff is unable to perform her past relevant work as a beautician. [AR at 21.] At step five, the ALJ concluded that based on plaintiff's age, educational background, past relevant work experience, and residual functional capacity, there are a significant number of jobs in the national economy that she can perform. [AR at 21-23.]

---

[3]   Specifically, the ALJ found that plaintiff could perform work that "would not require her to lift and carry more than 50 pounds occasionally and 25 pounds frequently; . . . would not require her to stand and or walk for more than 6 hours of an 8 hour workday, sit more than 6 hours of an 8 hour workday; and . . . would allow for moderate limitations in the ability to reach with the left non-dominant arm." [AR at 20.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ: (1) did not properly consider certain of plaintiff's medical problems to be severe impairments; (2) failed to consider the combined effect of all of plaintiff's impairments in assessing her residual functional capacity; (3) improperly relied upon the medical vocational grids to find plaintiff not disabled; and (4) did not properly assess plaintiff's credibility. Joint Stipulation ("Joint Stip.") at 4. For the reasons discussed below, the Court agrees with plaintiff, in part, and reverses the ALJ's decision and remands the case for further proceedings.

### A. THE EVIDENCE

In July, 2001, plaintiff reported that she had been having mid-back pain for 1-1/2 to 2 years, lower back pain, as well as right shoulder pain to the extent that she could not put her arm behind her back. [AR at 118-19.] She also complained of neck pain and headaches. [AR at 120.] Cervical and dorso-lumbar motion studies produced less than normal results and pain upon certain motion. [AR at 117.]

An MRI taken in August, 2001, of plaintiff's cervical spine revealed a small central disc-osteophyte complex at C5-6, with no evidence of cord compression. There were also mild left-sided degenerative changes producing minimal foraminal stenosis at that site. [AR at 144-45.] In September, 2001, plaintiff again complained of middle and lower back pain, and she was treated with a facet block. [AR at 133-34.]

On April 16, 2002, following a neurological examination, plaintiff was diagnosed with cervical and lumbar spondylosis. [AR at 128.] In July, 2002, plaintiff complained of stiffness in her neck, and daily headaches. She was diagnosed with headache, neck pain, and arthralgia, and it was recommended that she continue with physical therapy. [AR at 123-24.] In September, 2002, plaintiff complained again, among other things, of neck and back pain. [AR at 158-59.] On October 3, 2002, plaintiff went to the hospital with left shoulder pain. [AR at 143.] She was found to have muscle spasm and decreased range of motion at her neck. [AR at 141.]

In June, 2002, plaintiff complained of pain in multiple joints. Dr. Javeed Ahmed, a rheumatologist, diagnosed her with arthralgias; rheumatoid arthritis, not active; degenerative disc disease of the cervical and lumbar spine; and hypothyroidism. Tenderness on range of motion was noted at plaintiff's spine. [AR at 178.] Dr. Ahmed found that she had bursitis in the right shoulder as a result of her occupation as a cosmetologist, and she was advised to do range of motion exercises. Plaintiff refused injections to her shoulder joints. [AR at 174.] In November, 2002, plaintiff complained of muscle cramps, poor sleep, and headaches in the morning. Dr. Ahmed modified her medications. [AR at 173.] In December, 2002, plaintiff indicated that her joint pains had improved, and that the medication was helping her. There were no signs or symptoms of rheumatoid arthritis at that time. [AR at 172.] In March, 2003, plaintiff was complaining of pain in her left shoulder, and was having difficulty moving because of the pain. Dr. Ahmed diagnosed her with pain in the left shoulder, "degenerative disc" of the lumbar spine, and hypothyroidism. Plaintiff received an injection to her left shoulder, was advised to do range of motion exercises, and was to continue taking her pain medication. [AR at 171.]

In April, 2003, plaintiff was examined by Dr. Adi Klein. Plaintiff complained of back pain, high cholesterol and fibroids. She indicated that the pain in her upper back and neck is sharp and constant. The range of motion of her neck was within normal limits. There was no tenderness to palpation in her back, no muscle spasm, and her muscle tone was equal throughout. The range of motion of her back was within normal limits. The range of motion in her shoulders was "grossly normal bilaterally." Dr. Klein indicated that there was no objective evidence to establish a diagnosis concerning her back pain. He imposed no restrictions on her ability to lift, carry, stand or walk. [AR at 186-91.] There was no abnormality demonstrated in radiological studies of her lumbosacral spine conducted in that same month. [AR at 192.]

A Physical Residual Functional Capacity Assessment completed in July, 2003, indicates that plaintiff can occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds, can stand and/or walk for 6 hours in an 8 hour work day and can sit for the same time frame. She was precluded from frequent pushing, pulling, and overhead reaching with her left upper extremity. [AR at 33-40.]

6

An MRI of plaintiff's left shoulder performed in February, 2004, revealed a "pre-disposition to impingement from acromioclavicular degenerative osteophytes." [AR at 225.] A radiographic examination of plaintiff's cervical spine showed no evidence of degenerative change. There was calcification in her right shoulder with calcific tendinitis, and supraspinatus tendinitis in her left shoulder. [AR at 227.]

Plaintiff testified at the hearing that she has been employed as a beautician since 1980. She has been working as of late on a part-time basis, and can work on average about 10 hours per week. [AR at 234-35, 239.] Her condition is getting worse, however. [AR at 235.] Plaintiff testified to problems with her back, legs, knees, hands and arms, which affect her ability to stand and walk. [AR at 235-37.] After a day of work she is so sore that she cannot walk, and sometimes cannot work for a week. [AR at 234-35.] She loves her job and makes "pretty good money" when she works, but is not physically able to do more. [AR at 237.] She can cook her own meals and do laundry, but she can no longer go upstairs, and has someone clean her house. [AR at 238.] She can stand for about 4 hours in an 8 hour day. [AR at 238-39.] Plaintiff is right handed. [AR at 241.][4]

The vocational expert testified that plaintiff's past work as a beautician is light work and skilled. [AR at 240.] The expert apparently opined that, with a limitation to moderate reaching with the non-dominant arm, plaintiff could not perform her past work as a beautician, but there are light jobs that an individual with plaintiff's limitations can perform. [AR at 241-42.]

**B.    THE NON-SEVERE IMPAIRMENTS**

Plaintiff contends that the ALJ erred in concluding that her cervical and lumbar spine impairments are not severe, i.e., that they do not have "more than a minimal [e]ffect on [plaintiff's] ability to perform basic work activities." Joint Stip. at 6. Defendant argues that the ALJ's finding

---

[4] The transcript provided to the Court from plaintiff's hearing [AR at 228-45] is of extraordinarily poor quality, and contains so many notations of certain testimony being "inaudible" that it makes a proper evaluation of plaintiff's testimony, and thus the ALJ's findings regarding her credibility, virtually impossible. On remand, defendant should insure that, if a further hearing is afforded, a transcript of good quality is obtained.

that these impairments are not severe was proper, as the ALJ based his conclusions on the limited evidence of treatment for and the lack of evidence to support plaintiff's complaints.  Joint Stip. at 7.

A "severe" impairment (or combination of impairments) is defined as one that significantly limits physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized that including a "severity" inquiry at stage two of the evaluation process permits the Commissioner to screen out claimants whose impairments are so slight that they are unlikely to be found disabled even if age, education, and experience are considered. Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994), citing Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).  However, overly stringent application of the "severity" requirement would violate the statute by denying benefits to claimants who meet the definition of "disabled."  Corrao, 20 F.3d at 949, citing Bowen v. Yuckert, 482 U.S. at 156-58 (O'Connor, J., concurring).

Accordingly, an impairment should be found to be "non-severe" only when the evidence establishes merely a slight abnormality, with no more than a minimal effect on ability to work. Corrao, id., citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)(citing Social Security Ruling 85-28 (1985)).  Despite use of the term "severe" here, most Circuits (including the Ninth Circuit) have held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996), citing Bowen v. Yuckert, 482 U.S. at 153-54; see also, e.g., Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989)(evaluation can stop at step two only when there is no more than minimal effect on ability to work).

Here, the ALJ concluded that plaintiff's "allegations of cervical and lumbar spine pain do not impose any significant limitations upon her ability to perform basic work activities."  As support, the ALJ indicates that plaintiff "did not seek treatment [from Dr. Ahmed] for any cervical or lumbar spine disorder." [AR at 19.]  However, Dr. Ahmed diagnosed plaintiff on multiple occasions with, among other things, degenerative disc disease of the cervical and lumbar spine.  He noted tenderness at her spine on range of motion.  [AR at 171, 174, 178.]  She had previously been

treated with at least one facet block for her back pain [AR at 133], and may have received a second facet block after she first saw Dr. Ahmed. [AR at 123.] This does not amount to a failure to seek treatment on her part. Nor were her complaints of back pain baseless. Indeed, an MRI of her cervical spine revealed an abnormality at C5-6.[5] She was independently diagnosed with cervical and lumbar spine spondylosis. Plaintiff testified that her ability to stand and walk has been impacted by her condition, and she can only stand for 4 hours in an 8 hour work day.

The ALJ relied in part on Dr. Klein's evaluation to show that plaintiff's back problems are not severe. But he also implicitly rejected that same report in concluding that plaintiff's shoulder problem is severe. This conclusion is inconsistent both in approach and result. If, as found by Dr. Klein, the range of motion of plaintiff's shoulders was "grossly normal," then the ALJ's finding of a severe impairment as to plaintiff's shoulder inexplicably rejects Dr. Klein's opinion in this regard in favor of Dr. Ahmed (who diagnosed her with left shoulder pain). Yet the ALJ accepted Dr. Klein's opinion as to plaintiff's back and rejected Dr. Ahmed's diagnosis of degenerative disc disease (as well as another physician's diagnosis of cervical and lumbar spine spondylosis). In short, the report of Dr. Ahmed relied on by the ALJ to support his finding of a severe shoulder impairment also contains a diagnosis of degenerative disc disease, a diagnosis that is wholly consistent with plaintiff's complaints of back pain and an inability to stand more than 4 hours in an 8 hour work day. Further, if the basis for finding a severe shoulder impairment is that plaintiff received an injection for the pain, then the same holds true for her back, for which she received at least one facet block. Having found her shoulder impairment to be severe, the evidence supported a finding of severity as to her back as well. The evidence presented by plaintiff thus meets the "de minimis" standard utilized in this Circuit, and the reasons given by the ALJ for rejecting plaintiff's complaints at this stage of the sequential analysis "were not substantial enough to meet the 'clear and convincing' standard when balanced against [plaintiff's] doctor's

---

[5] The August, 2001, MRI of plaintiff's spine appears to be the only MRI of her spine that was performed.

contemporaneous observations, some objective tests and [plaintiff's] subjective complaints." Webb v. Barnhart, 2005 WL 3544685, *4 (9th Cir. Dec. 29, 2005).

A further evaluation of plaintiff's credibility is also in order, as her credibility is related to the severity of her impairments. As plaintiff produced objective medical evidence of impairments that can reasonably be expected to produce some degree of pain, her allegations of pain can be rejected only upon a finding that plaintiff is malingering (no such finding was made here), or by expressing clear and convincing reasons for doing so. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Some of the reasons provided by the ALJ are suspect. The ALJ noted that disability is "the total inability to work," and commented that plaintiff reported that "on an average day she walks and is on her feet all day at work." [AR at 20.] Plaintiff correctly notes (Joint Stip. at 19) that the ALJ's citation to the record for this proposition (5E, 3) is inaccurate, and that plaintiff's comment that she is on her feet "all day" at work must be read in the context of her working only part time, a claim accepted by the ALJ. [AR at 21.] It is not inconsistent for plaintiff to state on the one hand that she could stand for only 4 hours out of an 8 hour work day, and on the other that she is on her feet all day at work. As she works part time -- only 10 hours per week -- an entire work day for her may be only 4 hours. The ALJ apparently did not explore this issue. The ALJ further cites as a reason to question plaintiff's credibility her "inability" to lift her left arm above her shoulder. [AR at 21.] But the record indicates that she reported having "trouble" raising her arms overhead, not an inability to do so. [AR at 98.] Her ability to raise her arm a single time at the hearing is not inconsistent with this statement.[6]

Further, the ALJ relies at least in part on plaintiff's continuing to work part time as a beautician to reject her credibility. But plaintiff's admission that she works about 10 hours per week, and that she can cook and do laundry, is a reflection on her credibility, rather than her lack thereof. Certainly it would be easier and less painful for her to sit at home, doing nothing, and then

---

[6] In any event, the transcript from the hearing does not specifically reflect what plaintiff was asked to do with her hands or arms, to what extent she succeeded in carrying out the request, or how she responded. [AR at 235-36.]

claim that her impairments prevent all activity. The Ninth Circuit is clear in the standard to utilize in evaluating activities of daily living:

> [Plaintiff] testified that she is able to go grocery shopping with assistance, walk approximately an hour in the malls, get together with her friends, play cards, swim, watch television, and read. She also took physical therapy for six months and exercised at home. The ALJ relied on this evidence to conclude that [plaintiff's] daily activities involved physical functions that were inconsistent with her claims of pain. Yet, these physical activities did not consume a *substantial part* of [plaintiff's] day. This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be "utterly incapacitated" in order to be disabled. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). In addition, activities such as walking in the mall and swimming are not necessarily transferable to the work setting with regard to the impact of pain. A patient may do these activities *despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved. As such, we find only a scintilla of evidence in the record to support the ALJ's finding that she lacked credibility about her pain and physical limitations. As revealed by the medical reports, [plaintiff's] constant quest for medical treatment and pain relief refutes such a finding.

Vertigan v. Halter, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (emphasis in original).

Certainly plaintiff is not utterly incapacitated. But that plaintiff is working as much as she possibly can despite her pain "suggests no more than that [she] was doing [her] utmost, in spite of [her] health, to support [her]self." Webb, at *4. [AR at 235.] The ALJ concedes that plaintiff's current work level is not substantial gainful activity [AR at 19]; on remand, the ALJ should determine whether there is a sufficient basis to conclude that plaintiff can engage in other activity for a "substantial part" of her day.[7]

/
/

---

[7] As plaintiff's remaining issues may be rendered moot in light of the Court's remand order, the Court will not address those claims herein. The Court notes, however, that the ALJ did not rely solely on the Medical-Vocational Guidelines in finding plaintiff not disabled, but considered the testimony of a vocational expert as well, based on plaintiff's non-exertional limitation on her ability to reach with her non-dominant arm. [AR at 21-22.]

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F. 3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is warranted in light of the severe nature of plaintiff's back impairments.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **GRANTED**; (2) the decision of the Commissioner is **REVERSED**; and (3) this action is **REMANDED** to defendant for further proceedings consistent with this Memorandum Opinion

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: January 13, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE